IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| WASHINGTON MUTUAL, INC., et al., | : | Bankruptcy Case No. 08-12229 (MFW) |
| Debtors. | : | |
| | : | |
| ALICE GRIFFIN, | : | |
| Appellant, | : | |
| v. | : | Civil Action No. 19-775-RGA |
| WMI LIQUIDATING TRUST, et al., | : | BAP No. 19-27 |
| Appellees. | : | |

**MEMORANDUM**

Alice Griffin appeals from an April 24, 2019 order of the Bankruptcy Court. (D.I. 1). The appeal has been fully briefed. (D.I. 11, 13, 18).

The notice of appeal was filed five days after the order, and it is therefore timely. The Bankruptcy Court's order denied Griffin's objection to the claims of various underwriters, and therefore finally resolved her objection. Thus, the ruling on the objection is a final order for purposes of appeal. This Court therefore has appellate jurisdiction.[1]

The appeal has its origins in the chapter 11 bankruptcy of Washington Mutual, filed in

---

[1] I note that the Bankruptcy Court granted a final decree on December 20, 2019, which, among other things, closed the bankruptcy case. (Bkr. No. 08-12229, D.I. 12707). The case was noted on the bankruptcy docket as being closed on January 23, 2020. In a related matter before this Court, Griffin argued that if the Bankruptcy Court granted the final decree, it would arguably equitably moot this appeal. *Griffin v. Washington Mutual, Inc.*, No. 19-2072, D.I. 1 at 8 (D.Del. Oct. 31, 2019). But that issue has not been raised in this appeal, and, since equitable mootness is not jurisdictional, I do not need to raise the issue *sua sponte*.

2008. The bankruptcy generated extensive litigation, with more than 12,000 docket entries over the years, all handled by the same Bankruptcy Judge. I mention the extent of the litigation because, to the extent the Bankruptcy Court was exercising discretion, its exercise of discretion is informed by its decade-long familiarity with the case.

The Bankruptcy Court considered Griffin's objection at a hearing on April 22, 2019. (D.I. 15 at A864-A908). The Court orally ruled on the objection, and subsequently entered the final written order. (D.I. 1-1). The Bankruptcy Court's oral ruling was:

> I do need to address some preliminary matters that weren't argued today and the first is whether or not Ms. Griffin or any other Class 19 creditor has standing to object to the underwriters' claims or to raise this issue.
> And while the trust asserts that Section 26.1 of the plan of reorganization gives the liquidating trustee the standing to object or to prosecute objections on behalf of the estate, as Ms. Griffin points out, that's not exclusive.
> And Section 502 generally does allow any other creditor to object to other creditor's claims.
> But there is an issue raised, even if Ms. Griffin or other shareholders or creditors did have standing to object to the claims, is it quite simply just too late to do that? And I think that it's not simply an objection to the claim. What really Ms. Griffin is pressing is an objection to the settlement of that claim. The claims were settled.
> First, the classification was settled in February of 2011 over eight years ago. The amount of the claims and the final resolution of the claims was stipulated to by the liquidating trustee over six years ago in March of 2013.
> And although Ms. Griffin complains they did not -- the shareholders and other parties did not get notice of that, the facts do not support that assertion. There were filings with the SEC immediately after the stipulation was executed, and in several annual SEC filings thereafter, and in the trustee's quarterly reports filed with this Court. And those all make it clear what the terms of the settlement were and the treatment of the underlying claims.
> So I believe that the equitable doctrine of laches precludes this objection from being prosecuted at this time. But even if it were not too late, again, my analysis would be predicated on whether or not this settlement was proper because the objection is to the settlement, not to the underlying claims.
> And the 3rd Circuit has told us the factors a Court must consider in approving a settlement are the probability of success in the litigation, the likely difficulties in collection, the complexity of the litigation, and the amount of expense, inconvenience, and delay involved in prosecuting the litigation rather than settling, and the paramount interests of creditors and other parties in interest.
> In this case, I think all those factors support approval of the final settlement by a liquidating trustee. While Ms. Griffin asserts that it was clear underwriters had no claim

as evidenced by the 83rd omnibus objection, I think it is clear that the underwriters disagreed with that. And the underwriters in filing their original claim and responding to the debtor's initial objection to that claim made it clear that they believed they had a valid claim against the estate.

And it is not hornbook law that an indemnity claim cannot be allowed for defense of a securities litigation, but really it depends as the 2nd Circuit in the *Globus* [*v. Law Research Serv. Inc.*, 418 F.2d 1276 (2d Cir. 1969)] case, it depends on whether or not the underwriters can show that they were not the tortfeasor, and they were nothing more than simply negligent.

Again, the claim of the underwriters was a contractual claim, not an equity claim. And if allowed in full, potentially could have been paid or allowed prior to any shareholders getting paid, including the preferred shareholders.

So there was substantial risk. The liquidating trustee would have had to, in essence, retry the securities litigation and would have had to try a subordination claim under 510. All of that, the liquidating trustee had no guarantee of success in that litigation, there were no difficulties in collection, but there certainly were difficulties, expense, inconvenience, and probably a substantial delay if that litigation had proceeded.

The fourth factor, the paramount interest of creditors and other parties in interest, I am having a lot of difficulty in trying to understand why the preferred shareholders believed that had the underwriters proceeded with their -- prosecution of their claim, and if in fact, they're -- at least the $24 million had been allowed as a Class 18 or higher creditor claim, and been paid a hundred percent [before] the preferred shareholders got anything, how that would have been better than the settlement, which disallowed any claim ahead of the Class 19, but allowed a partial claim in Class 19.

So I think that all of the factors and approval of a settlement make it clear that this settlement was not in bad faith, was not a breach of fiduciary duty, but really was a proper exercise of the liquidating trust obligation under the trust agreement. And if it had been presented to me, I think I would have approved it at the time.

So quite frankly I think whether or not it was required to be presented to me under the agreement between the parties or whether the parties could mutually waive that requirement, I still would have approved it.

I think a hundred percent of a claim is worse for those in classes below it than one percent of their claim distribution. So I will deny the objection of Ms. Griffin to that underwriters claims as settled in the second stipulation.

(D.I. 15 at A904-A908) (minor punctuation and spelling changes).

In order to resolve the issue on appeal, I do not think anything more than a rudimentary description of the procedural history is necessary.

Washington Mutual (hereinafter, Debtor) filed for chapter 11 bankruptcy in 2008. Relevant Claims 3935 and 4045 were filed, with Claim 3935 being filed on January 17, 2011. (D.I. 14 at A018-A021). Claim 4045 was a supplemental claim filed later. (*Id.* at A367-A368

n.2). On February 4, 2011, the Bankruptcy Court approved a stipulation assigning one set of claims to "Class 18" and another set of claims to "Class 20" (later to be "reclassified" as "Class 19" claims). (*Id.* at A035-A042; A367-A368). The WMI Liquidating Trust was created. (*Id.* at A166-A222). On February 24, 2012, the Bankruptcy Court confirmed a plan of reorganization. (*Id.* at A223-A339). Griffin was a member of Class 19. The plan of reorganization granted the Trust some authority – the parties dispute whether the authority could be exercised without court approval -- to resolve claims. The Trust settled, on March 28, 2013, further issues relating to above-referenced Class 18 and Class 19 claims by agreeing to disallow the Class 18 claims but to allow the Class 19 claims. (*Id.* at A365-A371). The 2013 settlement was reported in the Trust's Form 10-K for the period ending December 31, 2012, and in a quarterly report to the Bankruptcy Court on April 30, 2013. (*Id.* at A396 (10-K); A456 (quarterly report)). The 2013 settlement stipulation stated that it was subject to the approval of the Court. (D.I.14 at A370). The Trust did not obtain approval of the Bankruptcy Court for the 2013 settlement. Debtor and the Trust spent years recovering $7 billion of "value" to distribute to various Classes. (D.I. 13 at 3). It does not appear based on the briefing and what the Bankruptcy Court understood when ruling on the objection at the heart of this case that even $7 billion provided enough value to pay any of Class 19's claims.[2]

On March 22, 2019, Griffin filed an objection to the allowance of proofs of claim 3935 and 4045 pursuant to the March 28, 2013 stipulation. (D.I. 15 at A745). In essence, the objection was to the inclusion of various underwriters' claims in Class 19. (*Id.* at A869).

---

[2] I have reviewed various filings on the Bankruptcy Court docket. One of them refers to a "final distribution to holders of Class 18 Allowed Claims." (Bkr. No. 08-12229, D.I. 12707 at 2). Bankruptcy Court documents also refer to a website, www.wmitrust.com, which refers to a distribution of $39 million to Class 18 members on January 13, 2020, which is said to represent 82% of the face value of the Class 18 claims. There is also reference to a stock distribution but that appears to be limited to Class 22 members.

On appeal, Griffin raises multiple issues. I do not need to address all of them.

Griffin argues that the Bankruptcy Court's laches ruling should be reversed. She argues that the Bankruptcy Court should not have considered laches because the Trust did not raise laches. She argues that the Bankruptcy Court made no finding of prejudice, and, in any event, that no such finding could have been made. She thus argues that the Bankruptcy Court's reliance on laches constituted an abuse of discretion. *See Bermuda Express, N.V. v. M/V Litsa*, 872 F.2d 554, 557 (3d Cir. 1989) (also noting that factual findings are reviewed for clear error and legal principles are reviewed *de novo*). Clearly, timeliness was an obvious issue when an objection was filed to something that had happened about six years earlier. In Griffin's objection in the Bankruptcy Court, she raised laches to explain why it did not apply. (D.I. 15 at A752 ¶21). The Trust argues that the objection was untimely, and that the Bankruptcy Court's decision could be affirmed as barred by the statute of limitations or the doctrine of laches. (D.I. 13 at 19-31). Inasmuch as I think the Bankruptcy Court's decision adequately rests on its approval of the merits of the settlement, I do not need to decide whether the Bankruptcy Court abused its discretion in deciding the objection was untimely.

Griffin argues on the merits that the 2013 settlement was not approved then and should not be approved now. Appellate review of settlements approved by a bankruptcy court is for abuse of discretion. *See In re NovaPro Holdings, LLC*, 2019 WL 1324950, at *3 (D.Del. Mar. 25, 2019), *appeal pending*, No. 19-1915 (3d Cir.). "Compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). "In bankruptcy appellate litigation, the abuse of discretion standard is highly deferential to the judgment of the bankruptcy court." *In re W.R. Grace & Co.*, 475 B.R. 34, 74 (D.Del. 2012).

When evaluating a proposed settlement, the bankruptcy court balances the value of the claim against the value of the claim as compromised. The bankruptcy court should consider: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393.

I assume for the sake of argument that the settlement is one that should have been presented to the Bankruptcy Court for approval. The Bankruptcy Court did the same, and it concluded that it would have approved the settlement. I do not believe it abused its discretion in concluding that it would have granted approval had the settlement been presented to it in 2013. The Bankruptcy Court's balancing of relevant factors did not constitute an abuse of discretion. The Bankruptcy Court's reference to a Second Circuit case was not error. The Second Circuit's holding limited that holding to "an underwriter may not be indemnified in a case such as this [involving actual knowledge of the misrepresentations]." *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1278 (2d Cir. 1969). "[I]t is important to emphasize at the outset that at this time we consider only the case where the underwriter has committed a sin graver than ordinary negligence." *Id.* at 1288. Whether the underwriters here committed a sin graver than ordinary negligence was a disputed issue, and the Bankruptcy Court's conclusion that it would take extensive litigation to resolve, with the eventual resolution being unclear, was not an abuse of discretion. Thus, I affirm the Bankruptcy Court's decision on the merits as not involving an abuse of discretion.

Griffin, who is an attorney, seeks an award for "making a substantial contribution" to the case as permitted by 11 U.S.C. § 503(b)(3)(D). I agree with the Trust that she did not make that request to the Bankruptcy Court, and it certainly would be inadvisable for me to consider it for

the first time on appeal. *See In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 261-62 (3d Cir. 2009). Griffin points out that in her Objection, she requested "costs and fees associated with bringing the Objection." (D.I. 18 at 16; *see* D.I. 15 at A758). There is nothing in this boilerplate request to suggest Griffin's present theory that she should recover one percent of Class 19's recovery because of her "substantial contribution." I will not consider this argument for the first time on appeal.

A separate order of affirmance will be entered.

/s/ Richard G. Andrews
United States District Judge